HENRY FRAZIER v. THE STATE.

No. 14423. Delivered June 10, 1931.
Appeal Reinstated October 14, 1931.
Rehearing Denied December 9, 1931.

The opinion states the case.

*Marshall & Perkins,* of Quanah, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Offense, possession of intoxicating liquor for the purpose of sale; punishment, two years in the penitentiary.

The caption fails to show the date of the adjournment of the term of court at which appellant was convicted. Under the decisions of this court the appeal must be dismissed. Sherman v. State, 115 Texas Crim. Rep., 414, 28 S. W. (2d) 801, and authorities cited.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been exam-

ined by the Judges of the Court of Criminal Appeals and approved by the Court.

CHRISTIAN, JUDGE.—The record having been corrected, the appeal is reinstated and the case considered on its merits.

Officers testified that they searched appellant's premises and found approximately five gallons of whisky buried in appellant's cow lot. They stated that at the time they discovered the whisky appellant said: "Yes, I have got ten gallons more but I guess you won't find it." According to the version of the officers, one of the officers stated to appellant that he thought he (appellant) "knew better than this". Appellant replied: "Well, I had to; my family is in destitute circumstances and I had to do something." The officers further testified that appellant aided them in carrying the whisky to their automobile. Appellant denied that he was in the cow lot with the officers. At this point we quote appellant's testimony as follows: "I do not know whether they found any whisky out there that day or not. I did not have any whisky there. They put something in the car and brought something away from that place. I saw them carrying some sacks but I do not know what was in those sacks. I never did see in those sacks. I could not say how they got there. I had some loose sacks in the barn, hull sacks and stuff like that. I had been feeding hulls and meal to the cows. I certainly will tell the jury that I did not have any whisky on that place. There was no whisky there that I know anything about, not a drop. If there was any whisky there it was not my whisky. I never buried any whisky there."

Appellant testified that he moved on the place after the death of one Eckert. Witnesses for appellant testified that Eckert kept whisky on the premises.

The officers were armed with a search warrant when they went to appellant's premises. On the trial it was admitted by the district attorney that the search warrant was invalid. Upon objection by appellant to the testimony of the officers touching the finding of the whisky, the state sought to show that appellant consented to the search. The several bills of exception relating to the action of the court in overruling appellant's objection to the testimony of the officers disclose that the officers testified that appellant stated to them prior to the time that they entered upon his premises and before they handed him the search warrant that they (the officers) were perfectly welcome to enter his premises and make a search. One of the officers testified as follows: "I had a conversation with Mr. Frazier just after I drove up right in front of his house, possibly as far as from here to the railing, to the yard fence. When I stopped he stepped out of the house and came outside of the yard fence. I said, 'Henry, they are telling bad tales on you', I said, 'We came out to look the place over', and he said 'All right, come on in, you are perfectly welcome.' * * * I was sitting in the car when I first had the conversation with Mr.

Frazier, and at that time he told me to go on and search. As well as I remember I had gotten to about the corner of the house from the car when I handed him the search warrant; I do not remember just where it was, I just took it out of my pocket and handed it to him as we were walking along; I don't remember just where but I am sure it was after we were in the inclosure. I had done started the search when I gave him the search warrant."

The other officer gave testimony substantially the same as the foregoing. He said that appellant consented to the search before the search warrant was delivered to him (appellant). We again quote from the testimony of one of the officers, as follows: "I told him afterwards that I had a search warrant. I told him that after I was walking in the house. I just handed him a copy as he was walking in the house, I think."

Appellant testified, in substance, that he told the officers to go ahead and make the search. However, he further testified that he did not make this statement to the officers until they had entered his premises and handed him a search warrant. He said he read the search warrant before telling the officers to go ahead with the search. The court overruled the objection to the testimony of the officers, with the statement that there was an issue of fact as to whether appellant consented to the search. Thereafer, in his main charge, the court submitted this issue to the jury.

As we understand the record, if the testimony of the officers was to be believed, appellant consented to the search before the officers entered upon his premises and prior to the exhibition by the officers of the search warrant. If the testimony of appellant was to be believed, he did not consent to the search until the officers entered his premises and he (appellant) had read the search warrant exhibited by the officers. The facts presented are not unlike those found in Gonzales v. State, 113 Texas Crim. Rep., 122, 18 S. W. (2d) 618. In Gonzales' case the officers went with an invalid search warrant to Gonzales' residence, and, according to their testimony, before beginning the search, told Gonzales they were officers and desired to search his residence. A copy of the search warrant was not delivered to Gonzales until after he had given his consent to the search. In the opinion overruling the motion for rehearing, Presiding Judge Morrow, speaking for the court, said: "We are of opinion that the trial court was warranted in drawing the conclusion from the testimony given by the officer on his voir dire examination that the appellant consented to the search."

The facts in the present case are unlike those in Dixon v. State, 108 Texas Crim. Rep., 650, 2 S. W. (2d) 273, cited by appellant. In that case the officers stated to Dixon that they had a search warrant under which they proposed to search his house. Dixon said: "All right, go ahead." In rendering the opinion, Judge Lattimore said: "We are of

the opinion that one, who is informed by the officers that they have a search warrant under which they proposed to search his house, who says nothing further than 'All right; go ahead', cannot be held to thereby waive irregularities in the search warrant, or to have given consent to the search without warrant."

Appellant also cites Jordan v. State, 111 Texas Crim. Rep., 83, 11 S. W. (2d) 323. In Jordan's case the accused's wife was advised that the officers had a search warrant for the search of the accused's residence. On being asked if she had any objection to the search the wife said "No; go ahead and search." Dixon v. State, supra, was cited in support of the holding that consent to make the search was not shown. As in Dixon's case, the officers exhibited a search warrant before Jordan's wife consented to the search. That one may consent to the search of his premises, and thereby waive irregularities in a search warrant, or dispense with a search warrant altogether is well settled. Hall v. State, 105 Texas Crim. Rep., 365, 288 S. W., 202; Williams v. State, 112 Texas Crim. Rep., 307, 17 S. W. (2d) 56; Gonzales v. State, supra. We think the officers' testimony warranted the conclusion that appellant consented to the search. Appellant's version of the transaction raised an issue as to whether appellant consented to the search. It was proper for the court to submit this issue to the jury.

In submitting the issue to the jury as to whether appellant consented to the search the court instructed the jury as follows:

"In this case you are charged that the search of defendant's premises, as testified about, was an illegal search unless the defendant gave to the officers permission to make the same at a time that defendant did not know they held a purported search warrant, and if you do not find and believe from the evidence that the defendant gave to the officers who searched his premises permission to sarch the same at a time when he did not know that they had a search warrant in their possession, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty."

Appellant objected to the foregoing charge on the ground that it placed upon him the burden of proving that he did not know that the officers held a purported search warrant at the time he consented to the search. Both appellant and the officers testified that appellant told them, in effect, that they might go ahead and search his premises. The question for the jury was whether this consent was given before or after the exhibition by the officers of the search warrant. The officers testified that they had not apprised appellant of the fact that they had a search warrant when he consented to the search. Appellant testified that they had entered his yard and that he had read the search warrant over before he gave his consent. The charge was probably inaccurately framed, but we are unable to see how it could have misled the jury, who were called

upon to determine whether appellant consented to the search before or after he learned that the officers had a search warrant. The effect of the charge was to advise the jury that if they had a reasonable doubt upon this issue they should acquit appellant.

Appellant objected to paragraph 8 of the court's charge on the ground that it was assumed therein that whisky was found on appellant's premises. The court, in substance, instructed the jury in said paragraph that if they believed from the evidence that the whisky found by the officers had been left on the place by Bill Eckert, or by any person other than the defendant, or if they had a reasonable doubt thereof, appellant should be acquitted. There was no denial of the fact that the officers found the whisky on appellant's premises. Appellant went no further in his testimony than to say that he had buried no whisky on the premises, and that if the officers found whisky thereon it did not belong to him. If the charge was erroneous in the respect mentioned, we are unable to see how it could have harmed appellant. The fact that the officers found whisky on appellant's premises was not controverted.

An examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The right to consent to the search is in the person whose property or effects are to be searched. By his voluntary consent he waives the right to oppose the proof of the result of the search upon the ground that it was unauthorized. The question of fact touching consent should be approached and viewed with the presumption that the officer possessing a search warrant acted under its authority. Proof of the result of an illegal search is inhibited by article 727a, C. C. P., 1925. When, as in the instant case, the state relies upon evidence acquired in a search without a warrant, it is charged with the burden of proving the waiver.

In the present instance, the officers possessed a search warrant. According to the testimony, one of them said to the appellant: "Henry, they are telling bad tales on you. We came out to look the place over."

Appellant said: "All right, come on in, you are perfectly welcome."

According to the officers, at the time these remarks were made, no search warrant had been exhibited nor mentioned; that after beginning the search they did produce and deliver the search warrant to the appellant.

According to the appellant's testimony, when the officers arrived, one of them said: "Hello, Henry, they are telling bad tales on you. I have a search warrant for your premises."

Appellant then said: "All right Mr. Hawkins, let's see it." The officer handed the warrant to the appellant. After reading the warrant the appellant said, "All right, go ahead". Appellant said he thought the search warrant was valid, but he made no agreement to search until after they produced the warrant. The officers claimed, however, to have found intoxicating liquor upon the premises. This the appellant denied. If the appellant's version was true, the search was illegal. From the conflict there arose a question of fact for the jury to answer. Perceiving no fault in the charge of which complaint is made, this court is bound by the verdict sustaining the version of the state's witnesses upon the subject of waiver.

We are constrained to overrule the motion for rehearing, and it is so ordered.

*Overruled.*