NO.
12-11-00016-CR

                        

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

BENJAMIN
ROGERS,                                     §                 APPEAL FROM THE 7TH

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                        §                 SMITH
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

            Benjamin
Rogers appeals his conviction for possession of a firearm by a felon, for which
he was sentenced to imprisonment for twenty years.  In two issues, Appellant
challenges the sufficiency of the evidence and the trial court’s ruling on his
motion to suppress.  We affirm.

 

Background

            Appellant
was charged by indictment with possession of a firearm by a felon and pleaded
“not guilty.”  The matter proceeded to a jury trial.  The evidence at trial
revealed that Appellant was in an altercation with Nathaniel Griffin on Palace
Street in Tyler, Texas.  According to Griffin, Appellant brandished a handgun
during their encounter.  The two men got into their vehicles and parted ways. 
Based on Griffin’s description, police officers located Appellant at a nearby gas
station.  Appellant was handcuffed and was advised that he was “only being
detained at the moment.”  Almost immediately thereafter, based on a single
request by a police officer, Appellant gave the officers verbal consent to
search him and his vehicle.[1]
 Upon
searching the vehicle’s center console, officers located a small .38 caliber
revolver containing two live rounds and two spent rounds.  

            Ultimately,
the jury found Appellant “guilty” as charged.  The matter proceeded to a jury
trial on punishment, after which the jury assessed Appellant’s punishment at
imprisonment for twenty years.  The trial court sentenced Appellant
accordingly, and this appeal followed.

 

Legal
Sufficiency

            In
his first issue, Appellant argues that the evidence is legally insufficient to
support the trial court’s judgment.  Specifically, Appellant contends that
there is no evidence that the premises at which he was arrested was a location
other than the premises at which he lived.  

Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  See Jackson v.
Virginia,
443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v.
State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref=d).  The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  See Jackson,
443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the
light most favorable to the verdict.  See Jackson, 443 U.S. at
320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186.  A conviction
can be supported solely by circumstantial evidence, which is as probative as
direct evidence.  See Kuciemba v. State, 310 S.W.3d 460, 462
(Tex. Crim. App. 2010).  A successful legal sufficiency challenge will result
in rendition of an acquittal by the reviewing court.  See Tibbs v.
Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652
(1982).

The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that
“accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State=s burden of proof or
unnecessarily restrict the State=s theories of liability, and
adequately describes the particular offense for which the defendant is tried.” 
Id. 

To
support Appellant’s conviction for possession of a firearm by a felon, the
State was required to prove that Appellant possessed a firearm at any location
other than the premises at which he lived.  See Tex. Penal Code Ann. § 46.04(a)(2) (Vernon 2011).  Here, the
record indicates that Appellant was detained in a gas station parking lot
standing beside his truck and that the handgun was located in the truck’s
center console.  Even assuming that Appellant lived in the gas station in
question, the parking lot adjacent to that gas station is not considered part
of the premises.  See Shepperd v. State, 586 S.W.2d 500, 504
(Tex. Crim. App. [Panel Op.] 1979) (if the appellant lived in camper behind
“beer joint,” he was away from premises where he lived when he left camper and
went onto parking lot with shotgun).  Moreover, there is no evidence that
Appellant lived in his truck.  However, it has been held that even where the
evidence indicates that a person lives part-time in his pickup truck, a pickup
truck cannot constitute the premises where a person lives for purposes of this
offense.  See Nesbit v. State, 720 S.W.2d 888, 891 (Tex.
App.–Austin 1986, no pet.).  Given the facts of the instant case, we likewise
conclude that Appellant’s truck cannot constitute the premises where a person
lives.  See id.  

We
have reviewed the record in the light most favorable to the verdict.  Having
done so, we hold that the evidence that Appellant was detained in a gas station
parking lot and that the handgun was found in the center console of Appellant’s
truck is legally sufficient to support that this location was not the place at
which Appellant lived.  Appellant’s first issue is overruled.

 

Motion to
Suppress

            In
his second issue, Appellant argues that the trial court erred in denying his
motion to suppress the evidence concerning the handgun that was found in his
truck’s center console.  Specifically, Appellant argues that his consent was
not voluntarily given.

Standard
of Review

We
review a trial court's ruling on a motion to suppress for abuse of discretion. 
See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim.
App.1996); Curry v. State, 965 S.W.2d 32, 33 (Tex. App.–Houston
[1st Dist.] 1998, no pet.).  In reviewing the trial court=s ruling, we apply a bifurcated standard of review. 
See Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Hernandez v. State, 957 S.W.2d
851, 852 (Tex. Crim. App. 1998).  We give almost total deference to the trial
court=s determination of historical
facts, while conducting a de novo review of the trial court=s application of the law to those facts.  See Carmouche,
10 S.W.3d at 327.  Furthermore, when, as in the instant case, Athe trial court fails to file findings of fact, we
view the evidence in the light most favorable to the trial court=s ruling and assume that the trial court made
implicit findings of fact that support its ruling as long as those findings are
supported by the record.@  State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  If the trial judge=s decision is correct on any theory of law
applicable to the case, the decision will be sustained.  Id. at
856.

In
the instant case, the trial court observed the dashboard camera video of the officers’
search of Appellant’s truck.[2]  Thereafter, the trial court
stated as follows:

 

You
see video all the way down to Houston intersection of Palace Street.  At about
5:42, the officer pulls into the Food Fast parking lot.  There’s a pickup
stopped up by the building.  There are two black males standing to what would
be the left, from camera view, left of the vehicle, one dressed in a green
shirt; one dressed in a white T-shirt and a hat.  That appears to be Mr.
Rogers.

 

As
the officer walks up, he asks, “How are y’all doing today?  Where are y’all
coming from?”

 

About
that time, the man in the green shirt moves away.  The defendant in the white
shirt and hat moves toward the officer and talks about the vehicle, and it’s
his truck.  The officer tells the defendant that someone has said that he
pulled a gun on them.

 

At
that point, they tell him because of that that they’re going to - - he’s not
under arrest, but that they’re going to make it safe for them and him, so they
put him in handcuffs behind his back.  And almost immediately[,] one of them
asks if [he minds] if they look through the vehicle, and his answer was - - I
didn’t write it verbatim; it went so fast.  It’s approximately 2 minutes, 53
seconds into the video.  “Yeah, I give you permission to search.  Yeah, I don’t
know what’s going on.”

 

Then[,]
another 10 or 15, 20 seconds, at approximately 3:15 on the video counter,
“Yeah, you can search me, too.”

 

3
minutes, 30 seconds, “yeah, go ahead.”

 

“No
gun in the truck?” is the question.

 

“No. 
Search it.  Search the tool box, too.”

 

Said
at about 4 minutes, just over, he was on - - yes, he was on Palace trying to
get his truck washed.  Continued to talk.  Basically moved all around, very
clearly not in custody as we typically see custody in the law enforcement
arrest context because he was wandering pretty much all over the camera range
with the officer continuing to bring him back over, kind of away from where the
officers were searching the vehicle.  

 

5
minutes, 30 seconds, “Look in the tool box.  Look in the tool box.”

 

The
officer reminded him he wasn’t under arrest; he’s merely being detained.  Just
into 6 minutes[,] he starts talking about his driver’s license.  7 minutes, 20
seconds on the video counter[,] he talks about his child support probations - -
or probations.

 

7
minutes, 50 seconds, he talks about the various convictions that he has.  8
minutes, 10 seconds[,] he’s asking to be able to call the detail shop where he
says he had been.  At 9 minutes 20, 25 seconds, the officer tells him to quit
talking; that they had found the gun in the console of the truck and that he
would be under arrest.

 

Consent
to search is one of the well established exceptions to the constitutional
requirements of both a warrant and probable cause.  Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973); State
v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997).  “The Fourth
Amendment test for a valid consent to search is that the consent be voluntary,
and ‘[v]oluntariness is a question of fact to be determined from all the
circumstances.’”  Ohio v. Robinette, 519 U.S. 33, 40, 117 S. Ct.
417, 421, 136 L. Ed. 2d 347 (1996) (quoting Schneckloth, 412 U.S.
at 248-49, 93 S. Ct. at 2059).  In order to be valid, the consent must “not be
coerced, by explicit or implicit means, by implied threat or covert force.”  Schneckloth,
412 U.S. at 228, 93 S. Ct. at 2048; Carmouche, 10 S.W.3d at 331; see
also Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App.
1991) (“The consent must be shown to be positive and unequivocal, and there
must not be any duress or coercion.”).  By the same token, consent is not
established by “showing no more than acquiescence to a claim of lawful
authority.”  Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct.
1788, 1792, 20 L. Ed. 2d 797 (1968) (where officer falsely represented he had
valid search warrant, consent not voluntary).

Although
the federal constitution requires only that the state prove the voluntariness
of consent by a preponderance of the evidence, the Texas Constitution requires
the state to show by clear and convincing evidence that the consent was freely
given.  See Ibarra, 953 S.W.2d at 245.  If the record
supports a finding by clear and convincing evidence that consent to search was
free and voluntary, we will not disturb that finding.  Carmouche,
10 S.W.3d at 331.

In
the instant case, we will consider whether the State proved that Appellant’s
consent to search his truck was voluntarily given by clear and convincing
evidence by looking at a variety of factors.  See Reasor v. State,
12 S.W.3d 813, 818 (Tex. Crim. App. 2000).  First, we consider the fact that Appellant
was handcuffed at the point he gave the officers consent to search his truck.
This factor weighs against the State’s assertion that Appellant’s consent to
search his truck was voluntary.  See id.  Moreover, Appellant was
not told that he could refuse consent.  But see Meeks v. State,
692 S.W.2d 504, 510 (Tex. Crim. App. 1985) (warning that individual does not
have to consent to search and has right to refuse is not required or
essential).

However,
we cannot discount the fact that the officer explained to Appellant that he was
not under arrest, but that he was being handcuffed for the officers’ safety as
well as his own.  Further, the record reflects that although Appellant was
handcuffed, his movement was not restricted.  Indeed, the trial court describes
that Appellant was “wandering
pretty much all over the camera range.”  Furthermore, there is no indication
that any law enforcement officer coerced Appellant or beguiled him to give his
consent to search.  Rather, Appellant was asked for consent only once and gave
it without hesitation.  What is more, Appellant repeatedly reinforced his
consent during the brief time the officers were searching his truck and even
suggested where the officers might focus their search.  Based upon our review
of the record with consideration given to the totality of the circumstances, we
conclude that there was clear and convincing evidence before the trial court to
allow it to find that not only was Appellant’s consent voluntarily given, but
also that it was given clearly, unequivocally, repeatedly, and with a degree of
enthusiasm.  Accordingly, we hold that the trial court did not abuse its
discretion in overruling Appellant’s motion to suppress.  Appellant’s second
issue is overruled.  

 

Disposition

Having
overruled Appellant’s first and second issues, we affirm the
trial court’s judgment.

 

 

James T.
Worthen

                                                                  
                       Chief Justice

 

 

 

 

Opinion delivered August 17,
2011.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1] Appellant
was later determined to be the registered owner of the vehicle. 

 





[2] The video
reviewed by the trial court is not part of the record on appeal.  Appellant
does not complain of the accuracy of the trial court’s description of the
pertinent parts of the video.  Rather, Appellant relies on the trial court’s
description of the events in the video as the basis for his argument.