**Eric Lee ROTHENBERG, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–03–00364–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 2004.

Discretionary Review Refused Dec. 8, 2004.

Kyle B. Johnson, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney, Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Division, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel Consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

TIM TAFT, Justice.

After the trial court denied his motion to suppress, appellant, Eric Lee Rothenberg, pleaded guilty, pursuant to a plea agreement, to the offense of possession with intent to deliver methamphetamine weighing more than four grams and less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d) (Vernon 2003). As part of the agreement, appellant also pleaded true to two enhancement paragraphs alleging the prior offenses of delivery of, and possession of, controlled substances. The trial court found appellant guilty, assessed his punishment at 30 years in prison, and certified his right to appeal the pretrial ruling. *See id.* § 481.112(d); TEX. PEN.CODE ANN. §§ 12.32(a), 12.42(d) (Vernon 2003); TEX. R.APP. P. 25.2(a)(2)(A). We are asked to determine whether, under Texas Constitution article I, section 9, law-enforcement personnel could, without appellant's consent, unlock a box in appellant's car and review its contents during a post-arrest inventory of the vehicle. *See* TEX. CONST. art. I, § 9. Based on this Court's recent resolution of this very issue in *Garza v. State*, No. 137 S.W.3d 878 (Tex.App.-Houston [1st Dist.] 2004, no pet. h.), we answer the question in the affirmative. We affirm.

## Background

One evening, appellant was driving a borrowed car, in which his wife, Julianne Rothenberg, was a passenger. Katy Police Officer Shiller pulled appellant over for his car's having an expired registration sticker. Officer Hughes stopped at the scene soon after Officer Shiller had arrived. When the officers ran appellant's driver's license number, they discovered an outstanding arrest warrant, arrested appellant, handcuffed him, and placed him in a police car.

When the officers told appellant that the car could be turned over to Julianne or towed, appellant requested the former. However, Julianne advised the officers that she had been having seizures that day, was weak, and was not feeling well. She "just didn't know if [she] was in the best condition to be [driving] at the time," and she told the officers that it was probably not a good idea for her to drive. Accordingly, the officers were unable to release the car to Julianne, and the car was instead impounded.

After Julianne had also been placed in the patrol car, the officers began an inventory of the impounded car. During the inventory, the officers found a large bag of lithium batteries; two bank bags containing white, powdery residue; and a bottle of ephedrine inside the car.[1] Additionally, the officers found in the car some beakers and two books—one showing where to obtain chemicals and chemical supplies, and the other outlining the chemical composition of various drugs, including methamphetamine.

The officers also found a lockbox in the car's hatchback. At the suppression hearing, Julianne testified that appellant kept jewelry, money, and tax records for his jewelry business in the lockbox. Appellant told the officers that the lockbox contained cash, jewelry, checks, bank statements, paperwork, and tools for his jewelry busi-

---

1. These items were known to the officers to be used in the manufacture of methamphetamine.

ness. Appellant testified that the lockbox was important to him and that he would want it taken care of.

The Katy Police Department had a policy, which the officers followed with appellant's car, for inventorying impounded vehicles. That policy required officers to inventory "all items inside of" the vehicle. Specifically, departmental policy required that "personal items that are worth something" and "anything of value" be inventoried. Officer Shiller explained that "if all items aren't documented, then obviously the person whose vehicle was towed can claim that there was anything in the vehicle.... [I]f there is a suitcase or something ... that we are going to leave with the car, we are pretty much responsible for whatever is in the vehicle. If we don't look and see what's in it, then he could say there is a million dollars in there or anything else he wanted to and we would be responsible for that." Officer Shiller also agreed that anything, including something that might be capable of harming officers, could be in a closed container.[2] Both officers testified that they would not be allowed to deposit the lockbox with the departmental property room without first having determined the box's contents.

The officers had already taken appellant's keys, along with the other property that appellant had on his person, when they arrested appellant. When the officers asked him if his keys included a key to the lockbox, appellant responded affirmatively, but he refused to consent to a search of the box. Nevertheless, the officers opened the lockbox with the key. Inside, the officers found several hundred small plastic baggies; a narcotics test kit containing vials, one of which contained a strong acid that could be used to make

methamphetamine; scales; a flat, metal spoon; a bottle of PH test strips; funnels; brushes; and small baggies containing methamphetamine.

## Standard of Review

■ Rulings on motions to suppress are subject to a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give almost total deference to the trial court's determination of historical facts that depend on credibility choices. *See Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997); *Wilson v. State*, 98 S.W.3d 265, 271 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). However, we decide de novo whether the trial court erred in applying the law to the facts. *Carmouche*, 10 S.W.3d at 327; *Wilson*, 98 S.W.3d at 271.

Although the trial court was not required to make fact findings or legal conclusions based on the type of suppression grounds asserted here, it did, which was within its discretion. *See* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 4.177 (2nd ed.2001) [hereinafter "DIX & DAWSON"]; *see also Janicek v. State*, 634 S.W.2d 687, 690 (Tex.Crim.App.1982) (noting that trial court made fact findings after suppression hearing concerning allegedly illegal entry into home); *Scallion v. State*, 433 S.W.2d 438, 439 (Tex.Crim.App.1968) (noting that trial court made fact findings after suppression hearing concerning allegedly illegal arrest). Accordingly, we review its express fact findings with great deference. *See, e.g., State v. Fudge*, 42 S.W.3d 226, 230 (Tex.App.-Austin 2001, no pet.) (in review of suppression ruling concerning validity of temporary detention, stating,

---

2. However, Officer Shiller did not personally believe that appellant's lockbox had anything harmful inside.

"Based on the standard of review, we will give great deference to this finding."); *see also Scallion,* 433 S.W.2d at 439 (noting, "The record in the case supports the judge's findings," which were filed as written findings after suppression hearing in which defendant sought suppression of fruits of allegedly illegal arrest); *State v. Velasquez,* 994 S.W.2d 676, 677 (Tex.Crim. App.1999) (relying on officer's testimony from hearing, at which defendant sought suppression of fruits of search, because trial court's written fact findings stated that officer was credible and that court below took his testimony as true).

### Inventory

In part of his sole issue on appeal, appellant argues that the search of the lockbox was invalid as an inventory under Texas Constitution article I, section 9, which he claims provides broader protection than does the Fourth Amendment of the United States Constitution.

We begin by noting that appellant does not challenge on appeal the validity of his arrest,[3] the officers' right to impound his car, the officers' right generally to inventory the car's contents (with the exception of their opening the lockbox), or the search or inventory of the lockbox under the Fourth Amendment. Rather, he challenges the officers' right, under Texas Constitution article I, section 9, to open the lockbox and to review its contents as part of the vehicle's post-arrest inventory. *See* Tex. Const. art. I, § 9.

The trial court found in pertinent part as follows:

11. Officer Shiller began to inventory the vehicle in preparation for impoundment.

. . .

13. Officer Shiller's inventory was conducted in accordance with the Katy Police Department's standard operating procedures for such inventories.

. . .

16. During the inventory, Officer Hughes discovered a locked box in the rear of the vehicle.

17. During the inventory, Officer Shiller opened the box, and found the substance that is the basis of Defendant's motion to suppress.

The trial court expressly concluded, in pertinent part:

2. The search of ERIC ROTHENBERG's vehicle was a routine automobile inventory search made without warrant in accordance with the police department's standard operating procedures.

3. The search of the box in ERIC ROTHENBERG's vehicle was within the scope of a reasonable routine automobile inventory search made without a warrant.

The trial court made no findings or conclusions concerning any other basis to justify the search of the lockbox.

▮ The inventory has long been recognized as falling outside the Fourth Amendment's warrant requirement. *See Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). The policies supporting inventories are the need to protect the owner's property while it is in police custody, to protect police from claims of lost, stolen, or vandalized property that is in their custody, and to protect the police from potential danger. *See Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990); *Garza,*

---

**3.** In fact, appellant testified at the suppression hearing that the arrest warrant was valid, and he agreed that his arrest was "perfectly legal."

137 S.W.3d at 881. As appellant notes, the Fourth Amendment to the United States Constitution allows police to open closed— even locked—containers as part of the inventory of an automobile, as long as they do so in accordance with standardized police procedures and as long as the police do not act in bad faith or for the sole purpose of investigation. *See Wells*, 495 U.S. at 4, 110 S.Ct. at 1635; *Bertine*, 479 U.S. at 375–76, 107 S.Ct. at 741–42; *Garza*, 137 S.W.3d at 882.

Appellant relies on *Autran v. State* in support of his argument that article I, section 9 provides broader protection for closed containers during inventories than does the Fourth Amendment. *See* 887 S.W.2d 31 (Tex.Crim.App.1994) (plurality op.). In *Autran*, a three-judge plurality of the Court of Criminal Appeals held that article I, section 9 provided broader protection than did the Fourth Amendment in the context of inventories and thus did not allow the opening of closed containers, locked or unlocked, during an inventory. *See id.* at 41–42. Judge Clinton concurred in the judgment, observing that, although the plurality might be correct that the Texas Constitution provided greater protection in this context, "other considerations and much more analysis is necessary before the Court may confidently say so ..." *Id.* at 42 (Clinton, J., concurring in judgment). Three more judges concurred in the judgment based solely on Fourth Amendment grounds. *See id.* at 42, 43 (Campbell and Maloney, J.J., concurring in judgment, with Meyers, J., joining one opinion). Two judges dissented. *See id.* at 43–49 (McCormick, J., dissenting, joined by White, J.).

■ *Autran* supports appellant's position. However, this Court has recently noted that *Autran* has no precedential value because it is a plurality opinion. *See Garza*, 137 S.W.3d at 884 (citing *Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App. 1992)).[4] Although we may nonetheless follow the reasoning and holdings of a plurality opinion, we are free to decline to follow them, especially if good reasons exist to do so. *See Hatcher v. State*, 916 S.W.2d 643, 645 (Tex.App.-Texarkana 1996, pet. ref'd) ("We decline ... to follow the plurality opinion in *Autran* because we do not believe that *Autran* constitutes either binding precedent or sound law."). Because good reasons exist not to follow the *Autran* plurality opinion, this Court, only days ago, declined to follow the *Autran* plurality's reasoning, holding instead that " 'in the context of inventories,' Article I, section 9 of the Texas Constitution does not offer greater protection to individuals against unreasonable searches and seizures than the Fourth Amendment." *Garza*, 137 S.W.3d at 885.

Based on our holding in *Garza*, we overrule appellant's challenge. We elaborate on *Garza's* reasoning herein. First, since deciding *Autran*, the Court of Criminal Appeals appears to have departed from the *Autran* plurality's reasoning and conclusion, albeit without expressly overruling or distinguishing *Autran*. *See Crittenden v. State*, 899 S.W.2d 668 (Tex.Crim.App. 1995); *Johnson v. State*, 912 S.W.2d 227 (Tex.Crim.App.1995). In *Crittenden*, a majority of the court held that a "pretext stop" was valid under article I, section 9 for reasons similar to those making it valid under the Fourth Amendment. *See Crit-*

---

4. *Accord Gonzalez v. State*, 990 S.W.2d 833, 835 (Tex.App.-El Paso 1999, pet. ref'd); *Jurdi v. State*, 980 S.W.2d 904, 907 (Tex.App.-Fort Worth 1998, pet. ref'd); *Wells v. State*, 968 S.W.2d 483, 486 (Tex.App.-Eastland 1998, pet. ref'd); *Trujillo v. State*, 952 S.W.2d 879, 881 (Tex.App.-Dallas 1997, no pet.); *Hatcher v. State*, 916 S.W.2d 643, 645–46 (Tex.App.-Texarkana 1996, pet. ref'd).

*tenden,* 899 S.W.2d at 673–74. In a foot-note, without mentioning *Autran,* the ma-jority stated,

> Absent some significant difference in the text of the two provisions, or some his-torically documented difference in atti-tude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different from our preferred inter-pretation of the Fourth Amendment. We will not read Article I, § 9 different-ly than the Fourth Amendment in a particular context simply, because we *can.*

*Id.* at 682 n. 8 (emphasis in original).[5]

Similarly, in *Johnson,* a plurality of four judges on the court concluded that a de-fendant was not seized within the meaning of article I, section 9 until he yielded to a show of authority, which was also the stan-dard under the Fourth Amendment. *See Johnson,* 912 S.W.2d at 235. In reaching its holding, and very much along the lines of what the *Crittenden* majority indicated, the *Johnson* plurality stated:

> A plain reading and comparison of the language of the Fourth Amendment and Art. I, § 9 reveals no substantive differ-ence.... The Fourth Amendment and Art. I, § 9 both protect the same right (freedom from unreasonable search and seizures) to the same degree (persons, houses, papers, and effects/possessions).
> . . .

In *Autran v. State,* ... the plurality believed there had to be an underlying intent for the two provisions to be differ-ent because a narrow construction would leave Art. I, § 9, specifically, and the Texas Constitution, generally, void of in-dependent meaning.

It would be practically impossible to discern from the language, alone, of Art. I, § 9 the intent of the citizens who framed that provision. There is little if any evidence of the intent of the Fram-ers of Art. I, § 9. We are left with the impression that the language of Art. I, § 9 is virtually identical to the language of the Fourth Amendment.

*Id.* at 232, 233 (footnote omitted); *accord Trujillo v. State,* 952 S.W.2d 879, 881 (Tex. App.-Dallas, no pet.) (summarizing this conclusion from *Johnson* in declining to follow *Autran* ). Moreover, in a footnote, the *Johnson* plurality appeared to criticize the *Autran* plurality's goal of "quest[ing] for 'independent meaning' " in the Texas Constitution. *Johnson,* 912 S.W.2d at 233 n. 6.

We state expressly what we clearly indi-cated in *Garza,* that the precedential value of *Autran* has been diminished by *Johnson* and *Crittenden. See Garza,* 137 S.W.3d at 884.[6]

Second, a majority of the Court of Crim-inal Appeals has only once substantively relied on the *Autran* plurality. *See State*

---

**5.** In contrast, the *Autran* plurality had found *no* guidance from the fact that the two provi-sions had similar language and the fact that a dearth of evidence showed the framers' intent concerning article I, section 9. *See Autran,* 887 S.W.2d at 38. Within a year after *Au-tran's* issuance, however, as evidenced by the quoted text from *Crittenden,* a majority of the court appears to have departed from that conclusion in *Autran. See Crittenden,* 899 S.W.2d at 682 n. 8.

**6.** We note that several of our sister courts have also concluded that *Johnson* and *Critten-den* have diminished the precedential value of *Autran. See State v. Mercado,* 993 S.W.2d 815, 818 (Tex.App.-El Paso 1999, pet. ref'd); *Gonzalez,* 990 S.W.2d at 835; *Jurdi,* 980 S.W.2d at 907; *Wells,* 968 S.W.2d at 486; *Trujillo,* 952 S.W.2d at 881 (locked bank bag); *Hatcher,* 916 S.W.2d at 645–46; *see also George v. State,* No. 03–00–00306–CR, 2001 WL 987053, at *2 (Tex.App.-Austin Aug.30, 2001, no pet.) (not designated for publica-tion).

*v. Ibarra,* 953 S.W.2d 242, 244 (Tex.Crim. App.1997). And even in *Ibarra,* the court relied only on the factors that the *Autran* plurality had suggested for determining whether the state Constitution provides greater protection than its federal counterpart, not on *Autran's* holding concerning inventory of closed containers. *See Ibarra,* 953 S.W.2d at 244–45 (holding that Texas Constitution requires voluntariness of consent to search to be proved by clear and convincing evidence, although federal Constitution requires only preponderance of evidence). Importantly, the high court has never followed *Autran's* specific holding concerning the validity of inventories of closed containers under the Texas Constitution. In fact, since *Autran,* a majority of the Court of Criminal Appeals has not found that article I, section 9 provides greater protection than that available under the Fourth Amendment in any context before it except for that in *Ibarra.*[7] And the same court, which in *Crittenden* and *Johnson* appears to have placed into question *Autran's* specific holding concerning inventories of closed containers, has counseled that the judiciary not "create new constitutional doctrines [based on reading the state Constitution differently] without solid jurisprudential foundation" and that the judiciary create such "new constitutional doctrines" "only when unique aspects of Texas history, jurisprudence, or

law support that separate interpretation." *Cobb v. State,* 85 S.W.3d 258, 268 (Tex. Crim.App.2002); *see also Crittenden,* 899 S.W.2d at 682 n. 8 ("Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different from our preferred interpretation of the Fourth Amendment.").

Third, we held in *Garza* that considerations such as " 'the facts of the case, state precedent on the issue, and state policy considerations' " did not justify " 'raising the ceiling of freedom of Texas citizens from unreasonable searches and seizures' " by reading article I, section 9 more broadly than the Fourth Amendment in the context of inventories. *Garza,* 137 S.W.3d at 885 (quoting *Johnson,* 912 S.W.2d at 234). An analysis of the *Autran* plurality's reasoning fully supports our holding in *Garza.*

In *Autran,* after concluding that the constitutional provisions' similar language and the dearth of evidence concerning the intent behind the Texas provision gave no guidance as to the breadth of article I, section 9,[8] the plurality considered three other factors in reaching its holding: (1) history and application, (2) comparable jurisprudence, and (3) practical policy considerations. *Autran,* 887 S.W.2d at 39–41.

---

7. In a few majority opinions, the Court of Criminal Appeals has also recognized *Autran* as an example of a situation in which the court interpreted the state Constitution more broadly than its federal counterpart, but in those opinions, the court did not rely on or apply the *Autran* plurality's specific holdings, and the cases before the court did not concern article I, section 9. *See Ex parte Mitchell,* 977 S.W.2d 575, 580 (Tex.Crim.App.1997); *Ex parte Davis,* 957 S.W.2d 9, 12 (Tex.Crim. App.1997). Before *Autran,* the court only once had held that Texas Constitution article I, section 9 provides greater protection than does its federal counterpart. *See Richardson*

*v. State,* 865 S.W.2d 944, 953 (Tex.Crim.App. 1993) (holding that pen register "may well constitute a 'search' under Article I, § 9 of the Texas Constitution," despite its not being a search under the federal Constitution); *see also* Dɪx & Dᴀᴡsᴏɴ, § 5.04 (noting that in only three situations—*Richardson, Ibarra,* and *Autran*—since deciding *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991), has the high court construed article I, section 9 more broadly than the Fourth Amendment).

8. *See Autran,* 887 S.W.2d at 38.

As for the first factor, the *Autran* plurality began by noting that the Fourth Amendment derived from the Massachusetts State Constitution. *Id.* at 39. The plurality then noted that similarities existed among the Massachusetts Constitution, the Fourth Amendment, and article I, section 9. *Id.* The plurality found it "significant" that the Massachusetts Supreme Court had construed its state constitution to provide more protection than did the Fourth Amendment. *Id.* However, the *Autran* plurality did not explain the reasoning behind the Massachusetts court's conclusion, why that conclusion mandated a similar interpretation of our constitution, or why the United States Supreme Court's narrower interpretation of the Fourth Amendment—which was based on the Massachusetts Constitution—was incorrect or inapposite to Texas's Constitution. *See id.* In fact, the plurality's sole explanation was the conclusory statement that "[c]onsideration of the history of the Fourth Amendment, art. XIV of the Massachusetts Constitution, and the similarities between art. I, § 9 and the Massachusetts Constitution, provides evidence that art. I, § 9 was intended to provide broader protection as well." *Id.* As for the second factor, the plurality discussed three states in which the judiciary had concluded that the state constitution provided more protection than did the Fourth Amendment in the context of inventories of closed containers. *Id.* at 40–41. However, the plurality provided virtually no analysis as to why the courts of these states so concluded or why their conclusion supported interpreting our constitution similarly. *See id.* As for the third factor, the plurality merely set out the three purposes of inventories generally, with no discussion or analysis of how those purposes supported a broader interpretation of article I, section 9. *Id.* at 41. Instead, the plurality stated only, "These policies have frequently satisfied our requirement that a search be 'reasonable.'" *Id.* As former Court of Criminal Appeals Judge Clinton remarked concerning the *Autran* plurality, "more mature deliberation" and "other considerations and much more analysis is necessary before the Court may confidently [reach the plurality's conclusion]...." [9] *Id.* at 42 (Clinton, J., concurring in judgment).

Our decision in *Garza* is also well supported by other caselaw. In *Garza,* we joined six of our sister courts of appeals [10]

---

9. We note that two of our sister courts have expressly stated their belief that the *Autran* plurality's reasoning is unsound. *See Cortes v. State,* No. 14–95–00794–CR, 1997 WL 295360, at *4 (Tex.App.-Houston [14th Dist.] June 5, 1997, pet. ref'd) (not designated for publication) (noting in apparent dictum that "*Autran* ... was a plurality opinion and we believe it is neither binding nor sound law."); *Hatcher v. State,* 916 S.W.2d 643, 645 (Tex. App.-Texarkana 1996, pet. ref'd) ("[W]e do not believe that *Autran* constitutes either binding precedent or sound law."); *see also Gonzalez v. State,* 990 S.W.2d 833, 835 (Tex. App.-El Paso 1999, pet. ref'd) ("[N]o persuasive case law suggests that following [*Autran's* ] reasoning is sound.").

10. *See George,* 2001 WL 987053, at *2; *Mercado,* 993 S.W.2d at 818–19; *Gonzalez,* 990

S.W.2d at 835; *Jurdi,* 980 S.W.2d at 907; *Wells,* 968 S.W.2d at 486; *Trujillo,* 952 S.W.2d at 881; *Madison v. State,* 922 S.W.2d 610, 613 (Tex.App.-Texarkana 1996, pet. ref'd); *see also Cortes,* 1997 WL 295360, at *4. Appellant relies on *State v. Lawson,* which followed *Autran,* but *Lawson* has since been overruled on this very ground. *See* 886 S.W.2d 554, 555–56 (Tex.App.-Fort Worth 1994, pet. ref'd), *overruled, Jurdi v. State,* 980 S.W.2d 904 (Tex.App.-Fort Worth 1998, pet. ref'd). Appellant also relies on *Gill v. State,* in which the Court of Criminal Appeals held that officers could not validly enter the locked trunk of a car by using substantial force (*i.e.,* by removing the car's back seat) under the auspices of an inventory search. 625 S.W.2d 307, 319–20 (Tex.Crim.App.1980) (op. on reh'g), *overruled on other grounds by Osban v. State,* 726 S.W.2d 107 (Tex.Crim.App.1986),

in declining to follow the *Autran* plurality. *See Garza,* 137 S.W.3d at 884. As we noted in *Garza,* the Court of Criminal Appeals has refused review in eight of the cases in which courts have declined to follow *Autran.*[11] *See id.* at 884 (noting, "[O]ther intermediate appellate courts ... have expressly declined to follow *Autran,* and the Court of Criminal Appeals has refused discretionary review in those cases in which a petition has been filed."). Although the decision to refuse petition for review is not itself precedential, the fact that the Court of Criminal Appeals has not corrected any lower court that has declined to follow *Autran,* despite repeated opportunities for the high court to do so, further demonstrates that our holding in *Garza* is correct and that *Autran* is not the law. *See State v. Mercado,* 993 S.W.2d 815, 818–19 (Tex. App.-El Paso 1999, pet. ref'd) (noting that Court of Criminal Appeals has had opportunity to correct lower courts' refusal to follow *Autran,* but has not done so); *Gonzalez,* 990 S.W.2d at 835 (reaching same conclusion based on refusals of petition for

review); *Trujillo,* 952 S.W.2d at 881 (noting similar matters).

■ Accordingly, applying *Garza's* holding, we utilize Fourth Amendment precedent to conclude that a peace officer may, under article I, section 9 of the Texas Constitution, open a closed container as part of an inventory of an automobile as long as the inventory is conducted in good faith pursuant to standard police procedure. *Garza,* 137 S.W.3d at 885 (citing *Bertine,* 479 U.S. at 374–75, 107 S.Ct. at 742–43). The undisputed evidence set out above supports the trial court's findings that the officers conducted an inventory of the car's contents pursuant to their department's standard procedures and supports the court's conclusion that the inventory's scope extended to the lockbox.

We overrule the portion of appellant's issue arguing that the search was invalid as an inventory. Given our disposition of this portion of the issue, we need not reach the remaining argument under appellant's issue, which asserts that the search was also invalid as a search incident to arrest.[12]

---

overruled by *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991). *Gill's* facts are clearly distinguishable: in *Gill,* the police entered a car's locked trunk by forcibly removing the back seat; here, the police opened a lockbox with a key. *See Kelley v. State,* 677 S.W.2d 34, 37 (Tex.Crim.App.1984) (in holding that inventory of items in trunk, opened with suspect's key, was valid, distinguishing *Gill* by indicating that it was the substantial force used by the officers in *Gill* that made the inventory in that case invalid). Additionally, in *Gill,* the court noted that "[i]f the locked trunk cannot be entered without the use of substantial force, it is unlikely that the police would be charged with losing or misappropriating items of personal property found [in the trunk]...." *Gill,* 625 S.W.2d at 320. Here, in contrast, the fact that the officers had both the lockbox and its key made them, if anything, *more* susceptible to accusations of theft because they could theoretically easily open the lockbox without outward evidence of their having done so. Therefore, unlike in *Gill,* the

policy reasons behind inventories supported the inventory here.

11. *See Hendricks v. State,* No. 05–01–00323–CR, 2002 WL 1981361, at *2 n. 1 (Tex.App.-Dallas Aug.29, 2002, pet. ref'd) (not designated for publication); *Mercado,* 993 S.W.2d 815; *Gonzalez,* 990 S.W.2d 833; *Crow v. State,* No. 05–97–01432–CR, 1999 WL 191459, at *1 (Tex.App.-Dallas Apr.8, 1999, pet. ref'd) (not designated for publication); *Jurdi,* 980 S.W.2d 904; *Wells,* 968 S.W.2d 483; *Madison,* 922 S.W.2d 610; *Hatcher,* 916 S.W.2d 643.

12. The trial court did not make fact findings and legal conclusions relating to the search's validity as a search incident to arrest. Appellant, however, challenges the search's validity on that unfound ground. Given our disposition, we need not decide the effect, if any, of appellant's challenging a ground that the trial court did not specify in its fact findings and legal conclusions.

## Conclusion

We affirm the judgment of the trial court.