COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-370-CR

 

 

ERIC JOSEPH HENSTENBERG                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                   MEMORANDUM
OPINION[1]

 

Appellant Eric Joseph
Henstenberg appeals his conviction for capital murder.  In two issues, he complains that the evidence
is legally insufficient to support his conviction and that the warrantless
search of his briefcase following his arrest violated the Fourth Amendment.  We affirm.








On the morning of February 3,
2004, fourteen-year-old Megan Cartwright was looking out the kitchen window
while eating breakfast when she saw flames in the upstairs window of a house
behind hers.  She called 911, and the 911
operator received the call at 7:30 a.m. 
Fire department personnel were dispatched to 605 Castlewood in
Arlington.  They found a gas can and a
box of matches in the downstairs hallway but no evidence of fire downstairs.  In an upstairs bedroom, they found that the
fire was no longer burning but that there was zero visibility due to thick,
black smoke.  Crawling along the carpet,
firefighter Scott Roland discovered Lorna Vermullen=s body.

Dr. Marc Krouse, the medical
examiner, later determined that Vermullen had been stabbed in the back three
times, with one of the wounds puncturing her right lung.  Dr. Krouse testified that Vermullen=s larynx was fractured and her esophagus was crushed against her
spine.  The cause of death was
strangulation; significant forceCthirty to thirty-five pounds of pressureChad been used.  There were
ligature markings and possible fingernail marks around Vermullen=s neck.  There was no sign of
defensive injuries on the body. 








Soon after the body was
discovered, neighbors told police that they had seen appellant=s car outside Vermullen=s house that morning, as late as 7:15 a.m.  Appellant had met Vermullen in August 2002
when he was employed as vicar at Grace Lutheran Church.  The two became close friends and socialized
together on a weekly basis.  When Rudy
Herbirch, Vermullen=s minister
at Grace Lutheran, called appellant at 8:47 a.m. on February 3 to tell him of
the discovery of the body, appellant told Herbirch that he had gone to
Vermullen=s house at
5:30 that morning to return a ceramic cross, which he had left on her porch
without seeing her.  Appellant claimed to
be on the freeway forty miles outside Austin, on his way back to school at
Lutheran Concordia Seminary. 

In fact, the police later
discovered that appellant was in his apartment in Arlington when he spoke with
Herbirch.  Appellant had called the
seminary at 7:35 a.m. on February 3 to say he was ill and would not be attending
classes that day.  Arlington homicide
detective John Bell, acting on the belief that appellant was in Austin, went
there to interview him.  When he
discovered that appellant had not shown up for his classes, Bell went to
appellant=s Austin
address, but appellant was not there either. 
Appellant did show up at the seminary on February 4, and a staff member
summoned the Austin police, who arrested him. 

Evidence admitted at trial
showed that a Sony laptop computer Vermullen used in her work for St. Paul=s Lutheran Church was found in appellant=s possession when he was arrested. 








Appellant testified at trial
and concedes that he admitted murdering Vermullen.  In his first issue, however, appellant claims
there is no evidence that he committed capital murder, i.e., that he
committed the murder while in the course of committing or attempting to commit
robbery or arson, as alleged in the indictment. 
Appellant argues that there is no evidence that any robbery took
place.  Instead, he contends that the
Sony computer belonged to St. Paul=s rather than to Vermullen and that he, as well as Vermullen, had a
possessory interest in it. 

A person commits the offense
of capital murder if he intentionally commits the murder in the course of
committing or attempting to commit robbery or arson.[2]  A person commits robbery if, in the course of
committing theft and with the intent to obtain or maintain control of the
property, he intentionally, knowingly, or recklessly causes bodily injury to
another.[3]  A person commits theft if he unlawfully
appropriates property with intent to deprive the owner of it.[4]  An Aowner@ is a person
who, among other things, has a greater right of possession to the property than
the actor.[5]








The court of criminal appeals
has defined Ain the
course of committing@ an offense
as conduct occurring in an attempt to commit, during the commission of, or in
the immediate flight after the attempt or commission of the offense.[6]  For a murder to qualify as capital murder,
the killer=s intent to
rob must be formed before or at the time of the murder.[7]  If there is evidence from which the jury
rationally could conclude beyond a reasonable doubt that the defendant formed
the intent to obtain or maintain control of the victim=s property either before or during the commission of the murder, then
the State has proven that the murder occurred in the course of robbery.[8]  The jury may infer the requisite intent from
the defendant=s conduct.[9]

In this case, the evidence
regarding robbery is as follows:








When appellant was arrested,
he had in his possession a Sony laptop computer that Vermullen used in her work
for St. Paul=s Lutheran
Church in Dallas, Texas.  Vermullen had
purchased the computer through St. Paul=s, which, as a nonprofit organization, did not have to pay sales tax
on it.  The computer had two log-in
screens on it, one for the church and one for Vermullen.  Regina Taylor, a crime scene investigator
with the Arlington police department, testified that, upon examining Vermullen=s office the morning of the murder, she found a printer, wires, and a
laptop case on the desk, but no laptop computer.  The computer=s Sony power cord was, however, still on the desk. 

Appellant testified that he
had helped Vermullen set up the database on the Sony computer and had, on
occasions before the murder, taken the computer from Vermullen=s home and used it for church work. 
He claimed that, on the evening before the murder, he had taken the
computer with Vermullen=s knowledge
and acquiescence because he needed to do a lot of work for St. Paul=s for the upcoming Holy Week. 
Appellant testified that he had not taken the Sony power cord with him
because Ait was a pain to rehook it all up@ and the battery power would be sufficient for all the work he needed
to do.  Appellant conceded, however, that
even though he had planned to use the computer for a whole week on battery
power, its battery life was only an hour or two long. 








At trial, the State and the
defense stipulated that numerous emails were exchanged between appellant and
Vermullen, some of which were sent from the Sony computer that St. Paul=s had purchased for Vermullen=s use and some of which were sent from a Compaq computer found in
appellant=s hotel room
during the execution of a search warrant. 
Appellant argues that this stipulation shows that he sent some emails to
Vermullen on the Sony computer, establishing that he had a possessory interest
in the computer equal to Vermullen=s.  The parties did not,
however, stipulate that appellant sent any emails from the Sony computer; they
merely stipulated that the entire group of emails came from either the Sony
computer or the Compaq computer. 

Viewing all of this evidence
in the light most favorable to the verdict, we hold that a rational trier of
fact could have found beyond a reasonable doubt that Vermullen had a greater
right of possession to the Sony computer than appellant did and that appellant
unlawfully appropriated the computer with the intent to deprive Vermullen of it
when he committed the murder.[10]  Although appellant testified that he had
taken the computer the evening before the murder with Vermullen=s knowledge and consent, the jury, as sole judge of the weight and
credibility of the evidence, was free to disbelieve this testimony.[11]  Accordingly, the evidence is legally
sufficient to establish that appellant murdered Vermullen in the course of
committing robbery.[12]








Next, appellant contends that
there is no evidence that he committed the murder in the course of committing arson.[13]  Although appellant acknowledges that he Astarted [a fire] in the home of the victim,@ he claims it was not an act of arson, because his Aintent was to destroy the body of the victim,@ not to destroy or damage her home.  


Because we have found the
evidence legally sufficient to establish capital murder in the course of
committing robbery, it is not necessary to address the sufficiency of the
evidence to support appellant=s conviction of the alternate 
theory of capital murder in the course of committing arson.  When the court=s charge authorizes the jury to convict on several different theories,
the verdict of guilt will be upheld if the evidence is sufficient as to any of
the theories.[14]









In his second issue,
appellant complains that the warrantless search of his briefcase seized at the
time of his arrest violated the Fourth Amendment.  When appellant was arrested, his briefcase
was sitting next to him.  The briefcase
was unzipped and partially open, and the arresting officer could see Aa laptop and paperwork and stuff.@  The officer seized appellant=s briefcase because it was departmental policy to take any property an
individual had with him at the time of his arrest in order to secure it until
its subsequent return to the individual. 
Two days later, another officer inventoried the briefcase and discovered
a Sony laptop computer inside.  The
officer did not open the laptop or search its contents until after he had
obtained a search warrant. 

The inventory search is a
well-recognized exception to the Fourth Amendment=s warrant requirement.[15]  The policies behind inventory searches are
the need to protect the owner=s property while it is in police custody, to protect police from
claims of lost, stolen, or vandalized property that is in their custody, and to
protect the police from potential danger.[16]  Such searches, even of closed containers, are
lawful as long as they are not used as a ruse for a general rummaging to
discover incriminating evidence.[17]








In this case, appellant=s briefcase was seized at the time of his arrest for inventorying in
accordance with departmental procedures. 
The inventory search revealed the Sony laptop computer that was clearly
visible to the arresting officer in the open briefcase at the time of the
arrest.  The police did not search, or
even open, the computer itself until they had obtained a search warrant.  Therefore, the inventory search of the
briefcase was not a ruse for general rummaging to discover incriminating
evidence, and the search did not violate the Fourth Amendment.  We overrule appellant=s second point.

Having overruled both of appellant=s points, we affirm the trial court=s judgment.     

PER CURIAM

PANEL
F: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
47.2(b)

 

DELIVERED: 
May 17, 2007

 











[1]See Tex. R. App. P. 47.4.





[2]Tex. Penal Code Ann. '
19.03(a)(2) (Vernon Supp. 2006).





[3]Id. ' 29.02(a)
(Vernon 2003).





[4]Id. '
31.03(a) (Vernon Supp. 2006).





[5]Id. '
1.07(a)(35)(A).





[6]Robertson
v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993), cert.
denied, 513 U.S. 853 (1994).





[7]Alvarado
v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).





[8]Id.





[9]Id.; Robertson,
871 S.W.2d at 705.





[10]See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (setting out legal
sufficiency standard of review). 





[11]See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000). 





[12]Alvarado, 912
S.W.2d at 207; Robertson, 871 S.W.2d at 705.





[13]A
person commits arson if the person starts a fire, regardless of whether the
fire continues after ignition, with the intent to destroy or damage any
habitation, knowing that it is located on property belonging to another or has
located within it property belonging to another. Tex. Penal Code Ann. ' 28.02(a)(2)(D)B(E)
(Vernon Supp. 2006).





[14]Ladd
v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).





[15]See
Colorado v. Bertine, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987); Rothenberg
v. State, 176 S.W.3d 53, 56-57 (Tex. App.CHouston
[1st Dist.] 2004, pet. ref=d); Jurdi v. State,
980 S.W.2d 904, 907-08 (Tex. App.CFort Worth 1998, pet. ref=d).





[16]See
Florida v. Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990); Rothenberg,
176 S.W.3d at 56-57.





[17]See
Wells, 495 U.S. at 4, 110 S. Ct. at 1635; Trujillo v. State, 952
S.W.2d 879, 882 (Tex. App.CDallas 1997, no pet.).