COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-370-CR

ERIC JOSEPH HENSTENBERG APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

Appellant Eric Joseph Henstenberg appeals his conviction for capital murder.  In two issues, he complains that the evidence is legally insufficient to support his conviction and that the warrantless search of his briefcase following his arrest violated the Fourth Amendment.  We affirm.

On the morning of February 3, 2004, fourteen-year-old Megan Cartwright was looking out the kitchen window while eating breakfast when she saw flames in the upstairs window of a house behind hers.  She called 911, and the 911 operator received the call at 7:30 a.m.  Fire department personnel were dispatched to 605 Castlewood in Arlington.  They found a gas can and a box of matches in the downstairs hallway but no evidence of fire downstairs.  In an upstairs bedroom, they found that the fire was no longer burning but that there was zero visibility due to thick, black smoke.  Crawling along the carpet, firefighter Scott Roland discovered Lorna Vermullen’s body.

Dr. Marc Krouse, the medical examiner, later determined that Vermullen had been stabbed in the back three times, with one of the wounds puncturing her right lung.  Dr. Krouse testified that Vermullen’s larynx was fractured and her esophagus was crushed against her spine.  The cause of death was strangulation; significant force—thirty to thirty-five pounds of pressure—had been used.  There were ligature markings and possible fingernail marks around Vermullen’s neck.  There was no sign of defensive injuries on the body. 

Soon after the body was discovered, neighbors told police that they had seen appellant’s car outside Vermullen’s house that morning, as late as 7:15 a.m.  Appellant had met Vermullen in August 2002 when he was employed as vicar at Grace Lutheran Church.  The two became close friends and socialized together on a weekly basis.  When Rudy Herbirch, Vermullen’s minister at Grace Lutheran, called appellant at 8:47 a.m. on February 3 to tell him of the discovery of the body, appellant told Herbirch that he had gone to Vermullen’s house at 5:30 that morning to return a ceramic cross, which he had left on her porch without seeing her.  Appellant claimed to be on the freeway forty miles outside Austin, on his way back to school at Lutheran Concordia Seminary. 

In fact, the police later discovered that appellant was in his apartment in Arlington when he spoke with Herbirch.  Appellant had called the seminary at 7:35 a.m. on February 3 to say he was ill and would not be attending classes that day.  Arlington homicide detective John Bell, acting on the belief that appellant was in Austin, went there to interview him.  When he discovered that appellant had not shown up for his classes, Bell went to appellant’s Austin address, but appellant was not there either.  Appellant did show up at the seminary on February 4, and a staff member summoned the Austin police, who arrested him. 

Evidence admitted at trial showed that a Sony laptop computer Vermullen used in her work for St. Paul’s Lutheran Church was found in appellant’s possession when he was arrested. 

Appellant testified at trial and concedes that he admitted murdering Vermullen.  In his first issue, however, appellant claims there is no evidence that he committed 
capital
 murder, i.e., that he committed the murder while in the course of committing or attempting to commit robbery or arson, as alleged in the indictment.  Appellant argues that there is no evidence that any robbery took place.  Instead, he contends that the Sony computer belonged to St. Paul’s rather than to Vermullen and that he, as well as Vermullen, had a possessory interest in it. 

A person commits the offense of capital murder if he intentionally commits the murder in the course of committing or attempting to commit robbery or arson.
(footnote: 2)  A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another.
(footnote: 3)  A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it.
(footnote: 4)  An “owner” is a person who, among other things, has a greater right of possession to the property than the actor.
(footnote: 5)
 The court of criminal appeals has defined “in the course of committing” an offense as conduct occurring in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of the offense.
(footnote: 6)  For a murder to qualify as capital murder, the killer’s intent to rob must be formed before or at the time of the murder.
(footnote: 7)  If there is evidence from which the jury rationally could conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim’s property either before or during the commission of the murder, then the State has proven that the murder occurred in the course of robbery.
(footnote: 8)  The jury may infer the requisite intent from the defendant’s conduct.
(footnote: 9)
 In this case, the evidence regarding robbery is as follows:

When appellant was arrested, he had in his possession a Sony laptop computer that Vermullen used in her work for St. Paul’s Lutheran Church in Dallas, Texas.  Vermullen had purchased the computer through St. Paul’s, which, as a nonprofit organization, did not have to pay sales tax on it.  The computer had two log-in screens on it, one for the church and one for Vermullen.  Regina Taylor, a crime scene investigator with the Arlington police department, testified that, upon examining Vermullen’s office the morning of the murder, she found a printer, wires, and a laptop case on the desk, but no laptop computer.  The computer’s Sony power cord was, however, still on the desk. 

Appellant testified that he had helped Vermullen set up the database on the Sony computer and had, on occasions before the murder, taken the computer from Vermullen’s home and used it for church work.  He claimed that, on the evening before the murder, he had taken the computer with Vermullen’s knowledge and acquiescence because he needed to do a lot of work for St. Paul’s for the upcoming Holy Week.  Appellant testified that he had not taken the Sony power cord with him because “it was a pain to rehook it all up” and the battery power would be sufficient for all the work he needed to do.  Appellant conceded, however, that even though he had planned to use the computer for a whole week on battery power, its battery life was only an hour or two long. 

At trial, the State and the defense stipulated that numerous emails were exchanged between appellant and Vermullen, some of which were sent from the Sony computer that St. Paul’s had purchased for Vermullen’s use and some of which were sent from a Compaq computer found in appellant’s hotel room during the execution of a search warrant.  Appellant argues that this stipulation shows that he sent some emails to Vermullen on the Sony computer, establishing that he had a possessory interest in the computer equal to Vermullen’s.  The parties did not, however, stipulate that appellant sent any emails from the Sony computer; they merely stipulated that the entire group of emails came from either the Sony computer or the Compaq computer. 

Viewing all of this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Vermullen had a greater right of possession to the Sony computer than appellant did and that appellant unlawfully appropriated the computer with the intent to deprive Vermullen of it when he committed the murder.
(footnote: 10)  Although appellant testified that he had taken the computer the evening before the murder with Vermullen’s knowledge and consent, the jury, as sole judge of the weight and credibility of the evidence, was free to disbelieve this testimony.
(footnote: 11)  Accordingly, the evidence is legally sufficient to establish that appellant murdered Vermullen in the course of committing robbery.
(footnote: 12)
 Next, appellant contends that there is no evidence that he committed the murder in the course of committing arson.
(footnote: 13)  Although appellant acknowledges that he “started [a fire] in the home of the victim,” he claims it was not an act of arson, because his “intent was to destroy the body of the victim,” not to destroy or damage her home.   

Because we have found the evidence legally sufficient to establish capital murder in the course of committing robbery, it is not necessary to address the sufficiency of the evidence to support appellant’s conviction of the alternate  theory of capital murder in the course of committing arson.  When the court’s charge authorizes the jury to convict on several different theories, the verdict of guilt will be upheld if the evidence is sufficient as to any of the theories.
(footnote: 14) 

In his second issue, appellant complains that the warrantless search of his briefcase seized at the time of his arrest violated the Fourth Amendment.  When appellant was arrested, his briefcase was sitting next to him.  The briefcase was unzipped and partially open, and the arresting officer could see “a laptop and paperwork and stuff.”  The officer seized appellant’s briefcase because it was departmental policy to take any property an individual had with him at the time of his arrest in order to secure it until its subsequent return to the individual.  Two days later, another officer inventoried the briefcase and discovered a Sony laptop computer inside.  The officer did not open the laptop or search its contents until after he had obtained a search warrant. 

The inventory search is a well-recognized exception to the Fourth Amendment’s warrant requirement.
(footnote: 15)  The policies behind inventory searches are the need to protect the owner’s property while it is in police custody, to protect police from claims of lost, stolen, or vandalized property that is in their custody, and to protect the police from potential danger.
(footnote: 16)  Such searches, even of closed containers, are lawful as long as they are not used as a ruse for a general rummaging to discover incriminating evidence.
(footnote: 17)
 In this case, appellant’s briefcase was seized at the time of his arrest for inventorying in accordance with departmental procedures.  The inventory search revealed the Sony laptop computer that was clearly visible to the arresting officer in the open briefcase at the time of the arrest.  The police did not search, or even open, the computer itself until they had obtained a search warrant.  Therefore, the inventory search of the briefcase was not a ruse for general rummaging to discover incriminating evidence, and the search did not violate the Fourth Amendment.  We overrule appellant’s second point.

Having overruled both of appellant’s points, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 17, 2007

 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon Supp. 2006).

3:
Id.
 § 29.02(a) (Vernon 2003).

4:
Id.
 § 31.03(a) (Vernon Supp. 2006).

5:
Id.
 § 1.07(a)(35)(A).

6:
Robertson v. State,
 871 S.W.2d 701, 705 (Tex. Crim. App. 1993), 
cert. denied,
 513 U.S. 853 (1994).

7:
Alvarado v. State,
 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).

8:
Id.

9:
Id.;
 
Robertson,
 871 S.W.2d at 705.

10:
See
 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (setting out legal sufficiency standard of review). 

11:
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State,
 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 

12:
Alvarado,
 912 S.W.2d at 207; 
Robertson,
 871 S.W.2d at 705.

13:
A person commits arson if the person starts a fire, regardless of whether the fire continues after ignition, with the intent to destroy or damage any habitation, knowing that it is located on property belonging to another or has located within it property belonging to another. 
Tex. Penal Code Ann.
 § 28.02(a)(2)(D)–(E) (Vernon Supp. 2006).

14:
Ladd v. State
, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).

15:
See Colorado v. Bertine,
 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987); 
Rothenberg v. State,
 176 S.W.3d 53, 56-57 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d); 
Jurdi v. State,
 980 S.W.2d 904, 907-08 (Tex. App.—Fort Worth 1998, pet. ref’d).

16:
See Florida v. Wells,
 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990); 
Rothenberg,
 176 S.W.3d at 56-57.

17:
See Wells,
 495 U.S. at 4, 110 S. Ct. at 1635; 
Trujillo v. State,
 952 S.W.2d 879, 882 (Tex. App.—Dallas 1997, no pet.).