\Opinion issued August 9, 2007


 











In The

Court of Appeals

For The

First District of Texas






NOS. 01-06-00467-CR

 01-06-00468-CR






JOEL CHUBASCO OBREGON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause Nos. 1035899 & 1064200










MEMORANDUM OPINION


 In appellate cause no. 01-06-00467-CR, (1) appellant, Joel Chubasco Obregon,
was charged with unlawful possession of a firearm. (2) In appellate cause no. 01-06-00468-CR, (3) appellant was charged with felony possession of a controlled substance. (4) 
After the trial court denied his motion to suppress, appellant pleaded guilty to the
charged offenses. Pursuant to appellant's plea bargain with the State, the trial court
sentenced appellant to eight years for each offense. In two points of error, appellant
argues that the trial court erred in denying his motion to suppress because (1) his
vehicle was illegally searched pursuant to the pretext doctrine and (2) the State failed
to prove that the inventory and impoundment were conducted according to procedural
guidelines. 

 We affirm.

Background


 On August 1, 2005, Deputy C. Mullins of the Harris County Sheriff's Office
responded to a trespass call in an apartment complex. When he arrived in the
apartment, deputies had detained Leah Kimes and D.J. Carder. Deputy Mullins found
a gun in the apartment and thought that he had seen narcotics in plain view. He also
noticed glass pipes and narcotics paraphernalia in the apartment. He described Kimes
and Carder as "involved and dealing" with methamphetamines. However, because
the amount of narcotics in the room was so small, he did not test for a controlled
substance; nor did he test for methamphetamines. Deputy Mullins testified that he
contacted a District Attorney to get charges against Carder for unlawful possession
of a firearm by a felon, but the District Attorney declined to press charges because the
gun was not close enough to Carder. 

 Deputy Mullins eventually allowed Kimes and Carder to go, but they remained
with him. Deputy Mullins testified that he asked Kimes and Carder if they had more
narcotics, and they responded that they could get him more. Kimes and Carder made
phone calls to get narcotics. They also met with Deputy Coffer. 

 Deputy Coffer later contacted Deputy Mullins with information that a white F-150 pickup truck with a large amount of methamphetamines was coming from
Humble. Deputy Mullins then set up surveillance at an Exxon parking lot. At trial,
Deputy Mullins admitted that he was looking for a "white 150" because he had reason
to believe, based on information from people he did not know, that that particular
vehicle might be transporting narcotics. 

 Deputy Mullins waited approximately 30 minutes at the Exxon station before
seeing appellant's truck, a white F-150 with no license plate on the front of the
vehicle, which prompted him to initiate a traffic stop. When asked if it was fair to say
that appellant's car was the one car that he was going to stop, Deputy Mullins replied,
"It matched the vehicle I was looking for, yes." 

 Appellant pulled over into a parking lot and drove approximately 150 feet
before stopping his truck. Deputy Mullins noticed that appellant appeared "nervous"
and "sweating." Upon learning that appellant did not have his driver's license,
Deputy Mullins returned to his police car to check appellant's name in his computer. 
When he returned to appellant, Deputy Mullins testified that appellant still appeared
"very nervous" and that he was "rubbing his hands together rapidly." Deputy Mullins
then removed appellant from his truck and placed him under arrest because he "feared
that he may have a weapon or something in that vehicle he didn't want [Deputy
Mullins] to know about . . . ." Deputy Mullins handcuffed appellant, escorted him
back to the patrol car, and read him his rights. While inventorying appellant's truck,
Deputy Mullins found a clear plastic bag of methamphetamine and a holstered, loaded
revolver in "plain view" in "the rear portion or the front portion of the rear floor
board. . . ." Deputy Mullins testified that the revolver was "easily accessible" by
appellant. 

 Deputy Mullins testified that no one else was in the truck besides appellant and
that he could not have turned the truck over to anyone else for them to drive instead
of impounding the truck. The State asked Deputy Mullins about the policy regarding
inventory at the sheriff's department and subsequent to arrest to which Deputy
Mullins responded, "If we arrest someone and their vehicle is there at the scene and
no one to release it to . . . we have it towed to Harris County Wrecker yard. . . . [T]hat
way the vehicle is not left behind to be . . . vandalized, stolen, you know damaged in
any way. Criminal mischief." Deputy Mullins also testified that the sheriff's office
follows this policy even if the stop is in a parking lot and not a public roadway
because "once we have taken that Defendant in custody we've taken responsibility
for that vehicle." 

 On cross-examination, Deputy Mullins admitted that the wrecker was at the
scene 13 minutes after he pulled appellant over, but he also testified that wreckers
usually follow police around 24 hours a day. Deputy Mullins testified that every
vehicle that is towed gets inventoried unless it is a crime scene, such as a homicide
with fingerprints and weapons. He also testified that the sheriff's department tows
a vehicle if someone is arrested and no one is there to whom to release it. Deputy
Mullins testified that he feared that the car or the valuables were at risk because he
had previously taken over five reports of burglary in that same parking lot. 

 The trial court also heard Kimes's testimony that she and Carder were taken
away from the apartment complex in a truck so that Carder could "work off his gun
charge and dope charge." Kimes further testified that Deputy Mullins said that they
"would pull [appellant] over as a street violation or traffic stop. They wouldn't just
run in on him to where it would reveal [Kimes] or D.J." She also recalled that Deputy
Mullins told her that he would not file a report describing her participation. 

 Motion to Suppress


 In his first point of error, appellant argues that the trial court erred in denying
his motion to suppress because the "vehicular inventory was a pretext to discover
evidence rendering the search unconstitutional under the Fourth Amendment of the
United States Constitution and Article I Section 9 of the Texas Constitution."

 We review a trial court's denial of a motion to suppress evidence for an abuse
of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). A trial
court abuses its discretion when it acts without reference to any guiding rules or
principles by acting arbitrarily or unreasonably. Galliford v. State, 101 S.W.3d 600,
604 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). We will afford almost total
deference to a trial court's determination of historical facts supported by the record,
especially when the findings are based on an evaluation of the credibility and
demeanor of the witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). In reviewing a ruling on a question of application of law to facts, we review
the evidence in the light most favorable to the trial court's ruling. Id. However, we
review de novo a trial court's determination of reasonable suspicion or probable
cause. Id. at 87.

 It is well established that, when a traffic violation is committed within an
officer's view, the officer may lawfully stop and detain the person for the traffic
violation. Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). The Rules
of the Road statutes require that a license plate be displayed on the front and rear of
a vehicle. See Tex. Transp. Code Ann. § 502.404 (Vernon 2007) (defining offense
of operating passenger car on public highway without a license plate at the front and
rear of the vehicle). While operating a motor vehicle, a driver must display a license
to a peace officer on demand. Tex. Transp. Code Ann. § 521.025 (Vernon 2007)
(defining offense of failing to display driver's license on demand of police officer).
Article 14.01(b) of the Texas Code of Criminal Procedure allows a peace officer to
arrest "an offender without a warrant for any offense committed in his presence or
within his view." Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005). 
Section 543.001 of the Texas Transportation Code allows any peace officer to arrest
without a warrant a person found committing a traffic violation, except for speeding
or a violation of the open container law. Tex. Transp. Code Ann. §§ 543.001,
.004(a)(1) (Vernon 2007). An arrest for a minor traffic violation is not an
unreasonable seizure under the Fourth Amendment. See Atwater v. City of Lago
Vista, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001); State v. Gray, 158 S.W.3d
465, 469 (Tex. Crim. App. 2005).

 Here, upon observing appellant driving without a front license plate, Deputy
Mullins properly initiated a traffic stop for the traffic violation. See Walter, 28
S.W.3d at 542; see also Garcia v. State, 218 S.W.3d 756, 760 (Tex. App.--Houston
[1st Dist.] 2007, no pet.) (holding that officers had probable cause to arrest defendant
because vehicle did not have license plates). Once he stopped appellant, Deputy
Mullins had probable cause to arrest appellant because of the traffic violation
committed in his presence and appellant's failure to present a valid driver's license. 
See Tex. Transp. Code Ann. §§ 521.025, 543.001, .004(a)(1).

 Having lawfully arrested appellant, Deputy Mullins was entitled to perform a
search incident to arrest of the passenger compartment of the truck that appellant was
driving when arrested. See Chimel v. California, 395 U.S. 752, 762-63, 89 S. Ct.
2034, 2040 (1969); see also New York v. Belton, 453 U.S. 454, 459-60, 101 S. Ct.
2860, 2864 (1981). Thus, the vehicular search did not violate the Fourth Amendment
of the United States Constitution. Moreover, we have previously held that, "in the
context of inventories," article I, section 9 of the Texas Constitution does not offer
greater protection to individuals against unreasonable searches and seizures than the
Fourth Amendment. Garza v. State, 137 S.W.3d 878, 885 (Tex. App.--Houston [1st
Dist.] 2004, pet. ref'd). Thus, appellant has not demonstrated his state constitutional
rights were violated.

 Appellant argues, however, that Deputy Mullins acted in bad faith because he
had an investigative motive for searching appellant's truck. We disagree. The fact
that the officer may have had another subjective motive for seizing appellant would
not have made an objectively reasonable seizure unlawful under the constitutions of
the United States or of this state. Gray, 158 S.W.3d at 469-70. Evidence that Deputy
Mullins had reasonable suspicion that appellant was involved in criminal activities
sufficient to justify a traffic stop is not evidence that Deputy Mullins lacked probable
cause to arrest appellant and to search his vehicle pursuant to that arrest. Although
the trial court heard evidence that Deputy Mullins was looking for a truck that
matched the description of the truck that appellant had been driving, the trial court
also heard Deputy Mullins's testimony that he arrested appellant because of
violations for lack of a license plate and driver's license and because he feared that
appellant might have a weapon. Thus, regardless of Deputy Mullins's information
or belief that appellant was carrying narcotics, Deputy Mullins had probable cause
to arrest appellant and to conduct a search incident to that arrest. 

 We overrule appellant's first point of error.

Vehicular Inventory

 In his second point of error, appellant asserts that the evidence of his criminal
activity was obtained following an unlawful impoundment and inventory search. (5) We
disagree.

 An inventory is constitutionally permissible as long as it is not a "ruse for a
general rummaging in order to discover incriminating evidence." Florida v. Wells,
495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990). Inventories conducted pursuant to
standard police procedures are considered reasonable under the Fourth Amendment. 
See South Dakota v. Opperman, 428 U.S. 364, 372, 96 S. Ct. 3092, 3098-99 (1976). 
During an inventory search, police may open closed containers so long as they do so
in accordance with standardized procedures. Colorado v. Bertine, 479 U.S. 367, 376,
107 S. Ct. 738, 743 (1987) (Blackmun, J., concurring); see also Rothenberg v. State,
176 S.W.3d 53, 57 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd) (holding that,
under article I, section 9 of Texas Constitution, peace officer may open closed
container as part of inventory of automobile as long as inventory is conducted in good
faith pursuant to standard police procedure).

 The trial court heard evidence that "If we arrest someone and their vehicle is
there at the scene and no one to release it to . . . we have it towed to Harris County
Wrecker yard. . . . [T]hat way the vehicle is not left behind to be . . . vandalized,
stolen, you know damaged in any way. Criminal mischief." Deputy Mullins also
testified that the sheriff's office follows this policy even if the stop is in a parking lot
and not a public roadway because "once we have taken that Defendant in custody
we've taken responsibility for that vehicle." Deputy Mullins also agreed that the
Sheriff's Department has a written inventory policy and that he follows it. There is
neither evidence in the record that the department's standardized procedures were not
followed nor evidence to support appellant's contention that the inventory was a
"mere pretext for investigation." 

 We conclude that the trial court did not abuse its discretion in denying
appellant's motion to suppress.

 We overrule appellant's second point of error.

Conclusion


 We affirm the judgment of the trial court.



 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. Trial court cause number 1035899.
2. See Tex. Pen. Code Ann. § 46.04 (Vernon Supp. 2006).
3. Trial court cause number 1064200.
4. See Tex. Pen. Code Ann. § 481.116(d) (Vernon Supp. 2006). Appellant's possession
of a controlled substance charge was enhanced with a conviction for burglary of a
habitation.
5. Because we have already held that the inventory search was permissible after arrest,
we will not address it here.